UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARSHFIELD MEDICAL CENTER – STEVENS POINT<br>Provider No. 52-0215<br>4100 State Highway 66<br>Stevens Point, WI 54482<br><br>MARSHFIELD MEDICAL CENTER – MARSHFIELD,<br>Provider No. 52-0037,<br>611 North Saint Joseph Avenue<br>Marshfield, WI 54911,<br><br>MARSHFIELD MEDICAL CENTER – BEAVER DAM,<br>Provider No. 52-0076<br>707 South University Avenue<br>Beaver Dam, ND 53916,<br><br>    Plaintiffs,<br><br>vs.<br><br>ROBERT KENNEDY, JR., in his official capacity, Secretary of the United States Department of Health and Human Services, 200 Independence Avenue, S.W., Room 700-E Washington, D.C. 20201<br><br>    Defendant. | Case No. 1:26-cv-00165 |

**COMPLAINT FOR JUDICIAL REVIEW**

Plaintiffs, Marshfield Medical Center-River Region Stevens Point Campus (Stevens Point), Marshfield Medical Center—Marshfield (Marshfield) and Marshfield Medical Center—Beaver Dam (Beaver Dam) (collectively, Providers or Sanford Health) bring this Complaint against Defendant Robert Kennedy, Jr., in his official capacity as

Secretary (Secretary) of the United States Department of Health and Human Services (HHS), to appeal the Provider Reimbursement Review Board's dismissal of their appeal. In support of its appeal, Sanford Health alleges:

## INTRODUCTION

1. In 1983, Congress changed how it required CMS to pay hospitals for inpatient services rendered to Medicare recipients—transitioning from a per-service rendered model to a prospective model based on the patient's diagnosis. The basis of this new payment model, according to Congress, was "the allowable operating costs per discharge of inpatient hospital services." 42 U.S.C. § 1395ww(d)(2); Pub. L. No. 98-21, § 601(d)(2). To calculate this original standardized amount, the cost per discharge, Congress required CMS to use its most recent data, update it to 1983, and project it forward by applying an applicable percentage increase for Federal Fiscal Year 1984.

2. To calculate the actual prospective payment, Congress required CMS to group patients into Discharge Related Groups (DRGs) based upon their medical conditions; multiply the standardized amount by a different factor unique to each DRG; and pay the hospital that sum for each discharged inpatient in each DRG.

3. For each subsequent year, the previous year's average standardized amount was further modified by another applicable percentage increase.

4. Congress further commanded that this prospective payment system be budget neutral for its first two years.

5. In Board Case Number 25-5766GC, the two Providers in this appeal challenged CMS's original calculation of the Standardized Amount because that original

2

calculation diluted the payment per discharge by including transferred patients in the denominator.

6. The Board did not reach the merits of the Providers' appeal. Instead, it improperly dismissed the appeal as duplicative of a previously dismissed appeals filed by a related provider organization, Sanford Health.

7. That rationale fails. When the Providers filed their cases before the Board, no Sanford Health Common Interest Related Parties (CIRP) appeal was pending. The previous dismissed Sanford Health CIRP appeals were dismissed by the Board before Sanford Health even acquired the two Providers in the current action, and before either received their Notices of Program Reimbursement (NPRs), or appealed these issues to the Board. It was therefore both factually and procedurally impossible for them to have joined any prior appeal.

8. Applying the Board's rules as it did runs contrary to the law as it denies two Providers their statutory right to appeal properly received and appealed NPRs based on a misapplication that separate Providers appeals in another provider organization's CIRP appeal can forfeit a Providers statutory appeal right. Congress created no such blockade.

9. The Providers therefore assert the Board's dismissal was an arbitrary and capricious application of the law, violated the Board's own rules and regulations, and was otherwise contrary to the law. 5 U.S.C. § 706.

4896-3563-7894v6

## PARTIES

10. Marshfield Medical Center — Stevens Point (Medicare Provider No. 52-0215), Marshfield Medical Center—Marshfield (Medicare Provider No. 52-0037) and Marshfield Medical Center—Beaver Dam (Medicare Provider No 52-0076) are not-for-profit, acute-care hospitals in Stevens Point, Wisconsin, Marshfield, Wisconsin, and Beaver Dam, North Dakota, respectively.

11. At all relevant times, both Providers were qualified as Medicare-participating, general acute-care hospital providers under the Medicare Act.

12. Sanford Health is a nonprofit, integrated health care delivery system headquartered in Sioux Falls, South Dakota. On January 2, 2025, both Providers became part of the Sanford Health system via a "change of ownership." 42 C.F.R. § 489.18(a); 42 C.F.R. § 489.18(c); *see also* The Medicare Financial Management Manual CMS Pub. 100-06, Ch. 3, § 130.1.

13. Defendant Robert Kennedy, Jr. is the Secretary of HHS. The Secretary, as the federal official responsible for administration of the Medicare program, has delegated that responsibility to CMS. 76 Fed. Reg. 13618 (Mar. 14, 2011).

## JURISDICTION AND VENUE

14. This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of final Medicare program agency decision).

15. Venue lies in this judicial district under 42 U.S.C. § 1395oo(f) and 28 U.S.C. §1391.

## BACKGROUND

**A.     General Background of the Medicare Program**

16.     The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease. 42 U.S.C. § 1395c. The Medicare program is federally funded and administered by the Secretary through the CMS and its contractors. 42 U.S.C. § 1395kk; 42 Fed. Reg. 13,282 (Mar. 9, 1977).

17.     The Medicare program is divided into several different parts. Relevant to this appeal, Part A of the Medicare program originally provided for coverage and payment for, inpatient hospital services on a fee-for-service basis. 42 U.S.C. §§ 1395c *et seq*. Part A services are furnished to Medicare beneficiaries by providers of services, including Marshfield and Beaver Dam, that have entered into written provider agreements with the Secretary to furnish hospital services to Medicare beneficiaries. *See* 42 U.S.C. § 1395c–§ 1395i-5.

18.     CMS pays providers participating in Part A of the Medicare program for covered services rendered to Medicare beneficiaries through "Medicare Administrative Contractors" (MACs), which are agents of the Secretary. Each Medicare-participating hospital is assigned to a MAC. 42 U.S.C. § 1395h. The amount of the Medicare Part A payment to a hospital for services furnished to Medicare beneficiaries is determined by its MAC based on instructions from CMS.

4896-3563-7894v6

**B.     Medicare Inpatient Prospective Payment System**

19.     Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted the hospital Inpatient Prospective Payment System (IPPS) to reimburse hospitals, including the Hospital, for inpatient hospital operating costs.

20.     Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs incurred by the hospitals. Rather, they stem from predetermined, nationally applicable rates based on the diagnosis of the patient determined at the time of discharge from the inpatient stay, subject to certain payment adjustments. One of these adjustments is the Medicare disproportionate share hospital (DSH) payment. *See* 42 U.S.C. § 1395ww(d)(5)(F).

**C.     Medicare IPPS Standardized Amount**

21.     When Congress created IPPS in 1983, it imposed upon the Secretary a new requirement:

> (d)(2) The Secretary shall determine a national adjusted DRG prospective payment rate, for each inpatient hospital discharge in fiscal year 1984 involving inpatient hospital services of a subsection (d) hospital in the United States, and shall determine a regional adjusted DRG prospective payment rate for such discharges in each region, for which payment may be made under part A of this title. Each such rate shall be determined for hospitals located in urban or rural areas within the United States or within each such region, respectively, as follows:
>
> > (A) Determining allowable individual hospital costs for base period. — The Secretary shall determine the allowable operating costs per discharge of inpatient hospital services for the hospital for the most recent cost reporting period for which data are available.

42 U.S.C. § 1395ww(d)(2); Pub. L. No. 98-21, § 601(d)(2).

22. The IPPS would apply to "each inpatient hospital discharge in fiscal year 1984." *Id*. Congress commanded the Secretary to use "the most recent cost reporting period for which data are available." *Id*. The Secretary chose 1981 data. 48 Fed. Reg. 39,752, 39,764 (Sept. 1, 1983). Congress commanded the Secretary to update that data for fiscal year 1984 by:

> (i) updating for fiscal year 1983 by the estimated average rate of change of hospital costs industry-wide between the cost reporting period used under such subparagraph and fiscal year 1983 and the most recent case-mix data available, and

> (ii) projecting for fiscal year 1984 by the applicable percentage increase (as defined in subsection (b)(3)(B)) for fiscal year 1984.

42 U.S.C. §§ 1395ww(d)(2)(B); Pub. L. No. 98-21, § 601(d)(2)(B).

23. Congress required the Secretary to "compute an average of the standardized amounts" for the United States as a whole and for all nine census divisions, and do so for urban and rural areas—generating the original Standardized Amount.[1] *Id*. § (d)(2)(D). After calculation, the Standardized Amount underwent distinct statutory reductions, increases, and adjustments.[2]

24. Congress further required the Secretary to assign each DRG a weighting factor—for each Medicare inpatient discharge, CMS multiplies the appropriate

---

[1] At that time, Congress planned to phase out the 18 regional Standardized Amounts, such that all discharges occurring during a cost reporting period or fiscal year beginning on or after October 1, 1986, would be paid only at "the national adjusted DRG prospective payment rate." *Id*. §§ (d)(1)(A)(i)–(iii). Congress subsequently postponed that transition to October 1, 1987. 42 U.S.C. § 1395ww(d)(1)(A)(iii), PL 99-272, April 7, 1986, 100 Stat 82. The regional calculation was subsequently reincorporated. 42 U.S.C. §§ 1395ww(d)(1)(A)(iii)(I) & (II), PL 100-203, December 22, 1987, 101 Stat 1330. Regional Standardized Amounts have not been incorporated in DRG adjustments since fiscal years ending on or before September 30, 1996. 42 U.S.C. § 1395ww(d)(1)(A)(iii) (2023).

[2] *See* §§ (d)(2)(E); (d)(2)(F); (d)(2)(G)(i)(I); (d)(2)(G)(ii)(I); (d)(3)(A); (d)(3)(B); (d)(3)(C); (d)(3)(D)(i)(I); (d)(3)(D)(ii)(I); (d)(5)(B); (d)(5)(C)(i); (d)(5)(C)(ii); (d)(5)(C)(iii); (d)(5)(C)(iv); (d)(5)(D); (e)(1)(A); & (e)(1)(B).

Standardized Amount by the DRG weighting factor and prospectively pays the hospital. 42 U.S.C. § 1395ww(d)(4) (1983).

25. For discharges in or after FFY 1985, Congress required the Secretary to start with "the respective average standardized amount computed for the previous fiscal year under paragraph (2)(D)" and impose a subparagraph (b)(3)(B) "applicable percentage increase." 42 U.S.C. § 1395(d)(4) (1983).

26. Congress set the applicable percentage increase to be used from FY 1983 to FY 1984 by statute:

> 1 percentage point plus the percentage, estimated by the Secretary, by which the cost of the mix of goods and services (including personnel costs but excluding non-operating costs) comprising routine, ancillary, and special care unit inpatient hospital services, based on an index of appropriately weighted indicators of changes in wages and prices which are representative of the mix of goods and services included in such inpatient hospital services, for such cost reporting period exceeds the cost of such mix of goods and services for the preceding 12–month cost reporting period.

*Id.*, § 1395ww(b)(3)(B).[3]

23. Likewise, the Secretary finalized rulemaking stating it would start with the FY 1983 data and "project[] for fiscal year 1984 by the applicable percentage increase (as defined in § 405.463(c)(3)) for fiscal year 1984." 42 C.F.R. § 405.473(b)(3)(ii),[4] 48 Fed. Reg. 39,752, 39,822 (Sept. 1, 1983). The Secretary simultaneously implemented 42 C.F.R. § 405.463(c)(3), which reads:

---

[3] On July 18, 1984, Congress reduced the applicable percentage increase by 0.75%.
[4] In 1985, CMS renumbered this subparagraph to 42 C.F.R. § 412.62(c).

> (i) The target rate percentage for each calendar year will equal the prospectively estimated increase in the market basket index for that calendar year, plus one percentage point.
>
> (ii) The market basket index is a hospital wage and price index that incorporates appropriately weighted indicators of changes in wages and prices that are representative of the mix of goods and services included in the most common categories of inpatient hospital operating costs subject to the ceiling as described in paragraph (c)(1) of this section.

48 Fed. Reg. 39,752, 39,816 (Sept. 1, 1983).

27. In the underlying Board appeal, the Providers appealed their DRG payments alleging CMS diluted the original Standardized Amount in 1983 when it included transferred patients in the denominator. [CITE Board Case No. 25-5766GC]

**D.  Budget Neutrality**

28. After calculating the FY 1984 Standardized Amount pursuant to §§ 1395ww(d)(2)(A)–(D), Congress commanded CMS to proportionally reduce all FY 1984 payments to maintain budget neutrality. *Id.* § (d)(2)(E).

29. For FY 1985, Congress required the Secretary to start with the FY 1984 Standardized Amount "computed for the previous fiscal year under paragraph (2)(D)." *Id.*, § (d)(3)(A). This (d)(2)(D) FY 1984 Standardized Amount did not incorporate the (d)(2)(E) budget neutrality reduction.

30. The Secretary was then to increase the (d)(2)(D) FY 1984 Standardized Amount by the applicable percentage increase. *Id.* § (d)(3)(A).

31. By requiring the Secretary to rely on the (d)(2)(D) FY 1984 Standardized Amount, Congress did not authorize the Secretary to carry the 1984 budget-neutrality adjustment—incorporated later at (d)(2)(F)—into the FY 1985 Standardized Amount.[5]

32. Congress explicitly prevented the FY 1984 budget-neutrality adjustment from impacting FY 1985 payment.

33. After calculating the FY 1985 Standardized Amount pursuant to § 1395ww(d)(3)(A)–(B), Congress commanded CMS to proportionally reduce all FY 1985 payments to maintain budget neutrality. *Id.* § (d)(3)(C).

34. For FY 1986, Congress required the Secretary to start with "the respective average standardized amount computed for the previous fiscal year under paragraph (2)(D) or under this subparagraph, increased for fiscal year 1985 by the applicable percentage increase under subsection (b)(3)(B)." *Id.* § (d)(3)(A).

35. By requiring the Secretary to rely on the (d)(3)(A) FY 1985 Standardized Amount, Congress did not authorize the Secretary to carry the 1985 budget-neutrality adjustment—incorporated later at (d)(3)(C)—into the FY 1986 Standardized Amount.

36. Congress explicitly prevented the FY 1985 budget-neutrality adjustment from impacting FY 1986 payment.

E. **Procedure for Administrative and Judicial Review**

37. A hospital dissatisfied with a final determination of the amount of its Medicare IPPS payment may appeal to the Board. 42 U.S.C. § 1395oo(a).

---

[5] Sections 1395ww(d)(2)(F) and (3)(C) both read, "Maintaining budget neutrality. The Secretary shall adjust each of such average standardized amounts as may be required under subsection (e)(1)(B) for that fiscal year."

38. An NPR constitutes a final determination that may be appealed to the Board under this authority. 5 U.S.C. § 704.

39. The decision of the Board on substantive or jurisdictional matters constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of a hospital's notification of the Board's decision. *See* 42 U.S.C. § 1395oo(f)(1).

40. A hospital may obtain judicial review of a final administrative decision, whether substantive or jurisdictional, by filing suit within 60 days of receipt of the final action in the administrative appeal in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia. 42 U.S.C. § 1395oo(f). In any such action, the Secretary is the proper defendant because the Secretary, acting through CMS, "is the real party of interest in any litigation involving the administration of the [Medicare] program." 42 C.F.R. § 421.5(b).

41. Interest is to be awarded in favor of a hospital that prevails in such an appeal. 42 U.S.C. § 1395oo(f)(2).

42. Judicial relief is also available under the equitable remedy of mandamus if a hospital has a clear right to the relief sought and the Secretary has a defined and non-discretionary duty to honor that right. *City of New York v. Heckler*, 742 F.2d 729 (2d Cir. 1984); *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001).

**F.     The Administrative Procedure Act (APA)**

43.     Under the APA, a "reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

44.     Furthermore, reviewing courts must hold unlawful and vacate agency action, findings or conclusions which it finds to be either

> 1.     in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or
> 2.     without observance of procedure required by law.

5 U.S.C. § 706(2)(C); and (D).

45.     The Medicare Act vests Providers with a right to appeal a final determination of its Medicare IPPS payment to the Board with which it is dissatisfied. 42 U.S.C. . § 1395oo(a). This grant of jurisdiction to the Board cannot be supplanted by Board procedures which function as effective jurisdictional bars. (CITE Bethesda).

## STATEMENT OF THE CASE

**A.     The Board's dismissal of Case No. 25-5766GC was arbitrary and capricious.**

46.     This action arises under the Medicare Act and APA. 42 U.S.C. § 1395oo(f)(1); 5 U.S.C. §§ 701 & 702. Providers' appeal the Board's wrongful dismissal. (CITE Case No. 25-5766GC).

47.     Providers' rights to a hearing on a final determination is undeniable. 42 U.S.C. § 1395oo; 42 C.F.R. § 405.1835.

48.     For a group appeal, the requirements are simple: the providers must be dissatisfied with the final determination, the amount in controversy must exceed $50,000

12

4896-3563-7894v6

in the aggregate, and the issue under appeal must involve "a single question of fact or interpretation of law, regulations, or CMS Rulings that is common to each provider in the group." 42 C.F.R. § 405.1837.

### A. Sanford Health's Original Appeals.

49. Three years before Providers were acquired by Sanford Health system, providers then within Sanford Health filed an appeal for Federal Fiscal Year 2022, challenging the Understated Amount Issue: FFY 2022 Understated Standardized Amount Predicate Fact CIRP Group appeal (Case No. 22-0411GC).

50. A year later, accurately capturing its corporate structure at that time and complying with the Board's rules, Sanford Health indicated that the group appeal was complete. The Providers on appeal were then still not part of Sanford Health, and had not received the NPRs on appeal.

51. In September 2024, the Board dismissed Case No. 22-0411GC for lack of jurisdiction. Those providers appealed that dismissal to federal court. *Adena Reg'l Med. Ctr. v. Becerra*, No. 1:24-cv-03336 (D.D.C. Nov. 26, 2024).

52. The government has indicated in that case that it anticipates requesting a voluntary remand to the Board of that Group Appeal—but it remains in federal court at this time. Status Report, *Adena Reg'l Med. Ctr. v. Kennedy*, No. 1:24-cv-03336-ABJ, ECF No. 12 (D.D.C. Dec. 19, 2025).

53. In January 2025, Sanford Health completed a merger with Marshfield Clinic, leaving Sanford Health as the surviving entity. Exhibit A at 8–11. As a result, the three Providers on appeal became part of Sanford Health via a change of ownership:

13

- Stevens Point;
- Beaver Dam and
- Marshfield

42 C.F.R. § 489.18(a); 42 C.F.R. § 489.18(c); *see also* The Medicare Financial Management Manual CMS Pub. 100-06, Ch. 3, §130.1.

54. Three months later, on March 20, 2025, Stevens Point received its FYE 12/31/22 NPR, which included a final determination for that fiscal year. Exhibit B at 5–6.

55. But by that point, no Sanford Health group appeal was pending as the Board had dismissed Sanford Health's FFY 2022 appeal six months before.

56. Thus, Stevens Point timely filed its CIRP Group Appeal Request on September 9, 2025, satisfying each of the statutory requirements. Exhibit B.

57. But Stevens Point anticipated that additional former Marshfield Clinics—including Beaver Dam and Marshfield—would soon receive their FY 2022 NPRs, because neither had yet received or appealed an NPR for that year. Stevens Point thus confirmed to the Board that the CIRP Group for Case No. 25-5766GC was not yet fully formed.

58. Shortly after, the Board improperly dismissed Case No. 25-5766GC as duplicative of Case No. 22-0411GC, reasoning that both appeals involved the same CIRP provider organization (Sanford Health), the same year (2022), and the same disputed issue (Understated Standardized Amount Predicate Fact). Exhibit C.

59. Despite the Providers having satisfied the statutory prerequisites to vest the Board with jurisdiction over their appeals, the Board relied upon its own rules to dismiss

14

the appeals. It held that the Providers' appeals were improper, duplicative filings of in violation of:

> **4.6.1 Same Issue from One Determination.** A provider may not appeal and pursue the same issue from a single final determination in more than one appeal (individual or group).
>
> **4.6.2 Same Issue from Multiple Determinations** Appeals of the same issue from distinct determinations covering the same time period must be pursued in a single appeal . . . .; and
>
> **4.6.3 Issue Previously Dismissed or Withdrawn** Once an issue is dismissed or withdrawn, the provider may not appeal or pursue that issue in any other case.

*Provider Reimbursement Review Board Rules*, Rules 4.6.1–4.6.3 (U.S. Dep't of Health & Human Servs., Ctrs. for Medicare & Medicaid Servs.); Exhibit C.

60. This dismissal was erroneous. Sanford Health initiated Case No. 22-0411GC on January 13, 2022. That appeal was fully formed, closed, and dismissed by September 2024—months before Stevens Point, Marshfield and Beaver Dam became part of Sanford Health or received appealable NPRs. None of the Providers on appeal had previously filed an appeal on this same issue. None appealed an issue covering the same time period in an appeal before the Board. None appealed an issue previously appealed by any of the Providers and then dismissed by the Board. (*See Rule 4.6.3 "If the provider has an issue dismissed from its individual appeal, it may not appeal or pursue that same issue in a group appeal covering the same time period."*). For each, these appeals were the first opportunity and first appeals the Providers filed on these issues and time periods before the Board.

61. When Sanford Health closed Case No. 22-0411GC, it had no knowledge—and no reason to anticipate—that more than 700 days later it would merge with another

15

health system and acquire additional providers with separately appealable NPRs eligible for inclusion in a CIRP group.

62. The Providers on appeal could not have joined Sanford Health's previously dismissed Case No. 22-0411GC. They had not yet received the NPRs necessary to support an appeal, and they did not become part of Sanford Health until January 2025 — months after the case had been dismissed by the Board. That factual impossibility — unforeseeable when the original group appeal closed — prevented Providers inclusion in Case No. 22-0411GC.

63. The Board's determination that Sanford Health was required to predict a future merger and the later issuance of appealable NPRs — was arbitrary and capricious under the Administrative Procedure Act. It's misapplication of its own rules was contrary to the law.

**B. The Board's dismissal of Case No. 25-5766GC was contrary to law.**

64. Likewise, 42 U.S.C. § 1395oo vests appeal rights in individual providers — not health systems — and any requirement to the contrary is unlawful.

65. The regulation on which the Board relied in dismissing Case No. 25-5766GC is narrow and conditional, and misapplies the plain text of the statute granting appeal rights:

> When the Board has determined that a [CIRP group] is fully formed, absent an order from the Board modifying its determination, no other *provider* under common ownership or control may appeal to the Board the issue that is the subject of the group appeal with respect to a cost reporting period that falls within the calendar year(s) covered by the group appeal.

42 C.F.R. § 405.1837(e)(1); Exhibit C.

66. Nevertheless, the Board dismissed Case No. 25-5766GC as duplicative, citing Board Rules 4.6.1, 4.6.2, and 4.6.3. Exhibit C. Those rules, too, by their plain terms apply only to individual providers—not to an entire health system such as Sanford Health.

67. Although the Board is authorized to "make rules and establish procedures" it must do so only in a way that is "not inconsistent with the law, regulations, and CMS Rulings, that are necessary or appropriate to carry out the provisions of section 1878 of the Act and of the regulations in this subpart." 42 C.F.R. § 405.1868.

68. Instead of appropriately confining its rules and procedures to individual providers, the Board extended provider-level restrictions to an entire health system—directly contradicting the statutes, regulations, and CMS rulings it is required to follow.

69. Critically, while Section 405.1835(b) governing individual appeals authorizes the Board to "dismiss with prejudice" an appeal that does not meet the requirements of §§ 405.1835(b)(1), (b)(2), or (b)(3), Section 405.1837, which governs group appeals, does not.

70. Board Rule 12 goes a step further, exceeding the Board's regulatory, by declaring, "The Board will dismiss appeal requests that do not meet the minimum filing requirements as identified in 42 C.F.R. § 405.1835(b)."

71. Sanford Health initiated a group appeal which met 42 C.F.R. § 405.1835(b)'s minimum filing requirements.

4896-3563-7894v6

72. Further, in its request for hearing, Sanford complied with Board Rule 12.10 and certified:

> [T]he group issue filed in this appeal is not pending in any other appeal for the same period for the same providers, nor has it been adjudicated, withdrawn, or dismissed from any other PRRB appeal. … [T]o the best of my knowledge, the appeal is filed in full compliance with such statutes, regulations, and rules.

Exhibit B.

73. The Providers' certification in Board Case No. 25-5766GC was accurate—they had not appealed that issue previously nor for that year.

74. For these reasons, the Board's dismissal of Case No. 25-5766GC was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## BASES FOR APPEAL

### Count 1: Violation of the APA and the Medicare Act

75. Providers incorporate by reference all prior paragraphs as though fully set forth herein.

76. Case No. 25-5766GC properly challenged CMS's calculation of the Understated Standardized Amount. This calculation violated congressional mandate because CMS included transferred patients in the denominator. Having met all statutory and regulatory requirements and complying with all Board Rules, Providers are entitled to a hearing on the merits of this challenge.

77. The APA prohibits the Secretary from implementing the Medicare Act in ways that are: arbitrary, capricious, an abuse of discretion or not in accordance with the law; in excess of statutory jurisdiction, authority, or limitations, or short of a statutory

right; without observance of procedure required by law; or unsupported by substantial evidence or unwarranted by the facts. 5 U.S.C. § 706.

78. The Board's dismissal was contrary to the law as it was "plainly erroneous or inconsistent with the regulation" or statute when it concluded those its own rules compelled dismissal of Providers' appeal. *See Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381 (1994).

79. The Board's dismissal of Providers' appeals was arbitrary and capricious because it did not "articulate a satisfactory explanation for its action including a rational connect between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856 (1983).

## Count 2: Mandamus

80. Providers incorporates by reference all prior paragraphs as though fully set forth herein.

81. The Secretary has the non-discretionary duty to reimburse Providers fully at the amounts to which it is entitled under the law. Providers are entitled to a writ of mandamus under 28 U.S.C. § 1361, directing the Secretary to reinstate Providers' CY 2022 Understated Standardized Amount Appeal so that it may proceed through the Board's procedures to a conclusion on the merits.

## Count 3: All Writs Act

82. Providers incorporate by reference all prior paragraphs as though fully set forth herein.

83. The Secretary has violated the Medicare Act and APA by improperly dismissing Providers' CY2022 Understated Standardized Amount Appeal. Under the All Writs Act, 28 U.S.C. § 1651, and other authority, Provider is entitled to issuance of an order requiring the Secretary to reinstate Provider's CY 2022 Understated Standardized Amount Appeal so that it may proceed through the Board's procedures to a conclusion on the merits.

### REQUEST FOR RELIEF

**Therefore**, Sanford Health requests this Court:

1. Order the Board to reverse and vacate its November 21, 2025, dismissal of Case No. 25-5766GC;

2. Issue a Writ of Mandamus directing the Secretary and the Board to reinstate Providers' CY 2022 Understated Standardized Amount Appeal so that it may proceed through the Board's procedures to a conclusion on the merits;

3. Award interest as required by 42 U.S.C. § 1395oo(f)(2); and

4. Any other relief this Court may consider appropriate.

Respectfully Submitted,

Hall, Render, Killian, Heath & Lyman, P.C.

By: ___/s/Andrew B. Howk___
Andrew B. Howk, Attorney No. IN0005
Kennedy E. Bunch, Attorney No. IN0018
500 North Meridian Street, Suite 400
Indianapolis, IN 46204-1293
Ph: (317) 633-4884
Email: ahowk@hallrender.com
        kbunch@hallrender.com
*Attorneys for Plaintiffs*